# OCTOBER, 1936.

GEORGE HOUSTON, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—97 S. W. (2d) 856.

St. Louis Court of Appeals. Opinion filed November 10, 1936.

Appellant's motion for rehearing overruled November 24, 1936.

Petition for Writ of Certiorari denied March 24, 1937.

*Fordyce, White, Mayne & Williams* and *R. E. La Driere* for appellant.

*Leroy A. Lincoln* of counsel.

*Philip C. Kopitsky, Kopitsky & Kessler* and *Wm. H. Allen* for respondent.

SUTTON, C.—This is an action on an insurance policy for $1,000 covering the life of Minnie Houston, who was plaintiff's wife. Plaintiff is the beneficiary named in the policy.

The petition alleges that the policy was issued on April 15, 1931, in the City of St. Louis, and that the insured died on March 26, 1932, while the policy was in force.

The answer charges that the insured in her application for the policy made false and fraudulent representations concerning her condition of health; that the insured represented that she had never had cancer and had not been attended by a physician, and had not had

any treatment, within the last five years, at any dispensary, hospital, or sanitorium; that said representations were false; that the insured had been suffering with carcinoma of the uterus, and had been under the care of physicians for the treatment of said disease, and had been a patient in a hospital for the treatment of said disease, prior to the date of said application; and that the insured died, on March 26, 1932, from said disease.

The application is in two parts, part A and part B. Part A is dated April 7, 1931, part B is dated April 15, 1931. The representations complained of are contained in part B. The policy provides that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." 

The trial, with a jury, resulted in a verdict and judgment in favor of the plaintiff for $1,090 as the amount due under the policy, including interest, and $150 as attorneys' fees.

Plaintiff testified that he went with his wife to see Dr. Stafford some time in the early part of April, 1931; that his wife was not ailing during the months of February and March, 1931; that she went to the hospital on April 8, 1931, which was after she signed the application for insurance with the defendant company; that he was not present when the application was signed; that his wife was treated by Dr. Haskell in December, 1931; that the doctor did not tell him that his wife had cancer; that the doctor treated his wife from December, 1931, until approximately the time of her death; that Dr. Hopkins treated her before Dr. Haskell's treatments began; that there were no doctors other than these treating his wife so far as he knew; that his wife appeared to be in good health in April, 1931, and he did not observe anything about her condition that would lead him to believe there was anything wrong with her.

Dr. Sidney Levin testified for defendant that he examined the insured on April 8, 1931; that a provisional diagnosis was made of cancer of the uterus, which could, however, have been some other condition; that he made a re-examination on May 1st; that she entered the hospital on May 4th; that the microscopic diagnosis showed positive cancer on May 5th; that she received radium treatment for the cancerous condition, and was discharged from the hospital on May 7th; that she returned to the hospital on July 16th for another radium treatment, and again on October 2nd, when she again had a radium treatment; that there were no subsequent treatments at the hospital, but that he called to see her at her home once or twice after that time; that her condition at the examination on April 8th could have been caused by something other than cancer; that cancer does not usually assert itself in a positive way shortly after its inception in the body and usually is very vague; that it is possible for a person to be suffering with cancer without knowing anything at all about it; that he did not tell the insured at any time that she was suffering with

cancer; that it was his policy not to tell; that when he saw the insured on April 8th, she appeared to be in very good health; that cancer is not usually very fast growing, but some times it is very fulminating.

Defendant introduced the proofs of death furnished defendant by plaintiff, consisting of a statement signed and sworn to by plaintiff dated April 4, 1932, a statement signed and sworn to by Dr. R. C. Haskell dated March 28, 1932, a letter from Dr. M. J. Hopkins dated April 30, 1932, and a letter from Dr. R. C. Haskell dated April 28, 1932.

In the statement signed and sworn to by the plaintiff dated April 4, 1932, he "agrees that the written statements and affidavits of all the physicians who attended or treated the insured shall constitute and they are hereby made a part of these proofs of death."

The statement signed and sworn to by Dr. R. C. Haskell dated March 28, 1932, contains the following:

"How long have you known deceased? Since December 21, 1931. "Date of death? March 26, 1932.

"What was the immediate cause of death? Carcinoma of the uterus.

"What were the contributory causes of death and the duration of each? Disease or impairment, carcinoma of the uterus; duration seven months.

"When were you first consulted by deceased for the condition which either directly or indirectly caused her death? December 21, 1931.

"Date of first visit in last illness? December 21, 1931.

"Date of last visit? March 25, 1932."

Dr. Haskell's letter of April 28, 1932, is as follows:

"This is to certify that Minnie Houston was under my professional care from December 21, 1931, to March 26, 1932, on which date she died. Diagnosis: Carcinoma of the uterus. The disease dated back to the latter part of August, 1931, according to the history of the case."

Dr. M. G. Hopkins, in his letter of April 30, 1932, stated that his services to the insured began on September 2, 1931, and that she was then suffering with carcinoma of the uterus; that he recommended radium treatment; that he saw her occasionally up to November 11, 1931.

Defendant introduced in evidence, over the objection of plaintiff, what purports to be a statement of Dr. Samuel Stafford to the effect that the cause of the insured's death was carcinoma of the uterus, and that the duration of the disease from his personal knowledge was one year.

Minnie C. Sheppard testified, for plaintiff, that she had known the insured since about 1924, and was a neighbor of hers; that she appeared to be a fine healthy looking woman and never complained; that she knew nothing about her illness in the early part of 1931, but that she appeared to be in good health and did some housework for

her in the nature of cleaning windows and scrubbing paints; that she did not know what she died of, but knew that she was a fine, healthy looking, robust woman, and worked.

Ollie Thompson testified, for plaintiff, that she knew the insured about two years before her death, and that during March and April, 1931, she appeared to be of good health, complexion, and color, and went about her housework as she saw her every day; that she never complained and did the housework around the house and did some work outside—washing and scrubbing.

Thomas Coleman testified, for plaintiff, that he knew the insured from her early childhood; that he saw her quite often in February, March, and April, 1931, and that she appeared to be in good health, and she did not complain of any suffering; that she had the usual color and appeared to be doing hard work about the house as usual; that he saw her about a week before she died, and did not recall exactly how long she was sick, but that she was not sick very long; that when he saw her about a week before she died she was able to sit up some, but that she was sick, of course, at that time.

Error is assigned by defendant upon the refusal of its instruction in the nature of a demurrer to the evidence requested at the close of the entire case. It is contended that the plaintiff's proofs of death introduced in evidence by the defendant show that the representation of the insured in her application that she had never had cancer, was false, and that her death resulted from that disease. It is also contended that if the representation was in fact false, it defeats recovery, though the representation was innocently made:

As to the first contention, it will suffice to observe that the proofs of death furnished by plaintiff do not show that the representation was false, but show just the contrary. In his sworn statement Dr. Haskell said the duration of the disease was seven months, and in his letter he said the disease dated back to the latter part of August, 1931.

Defendant, however, relies on what purports to be a statement of Dr. Stafford. It contends that this statement constitutes a part of the proofs of death. But this contention is not supported by any evidence. It is not shown that the plaintiff furnished this statement to the defendant. On the contrary, plaintiff testified that he knew nothing of it. There was no evidence to show that it was made or signed by Dr. Stafford, or how the defendant came into possession of it. It is true it purports on its face to be a part of the proofs of death, but this does not prove its authenticity. But if it were regarded as authentic it was nevertheless no part of the plaintiff's proofs of death. The agreement in his statement of April 8, 1932, to the effect that the written statements and affidavits of all physicians who attended or treated insured should constitute a part of the proofs of death, evidently refers to statements and affidavits furnished to defendant by plaintiff, and not statements and affidavits furnished

to the defendant by the physicians without the knowledge of the plaintiff.

We do not think it may be said as a matter of law, in view of all the evidence in the case, that the insured was suffering with cancer at the time of the making of her application.

We do not agree with the defendant, however, that a misrepresentation made in the application defeats recovery, though the representation was innocently made.

In Grand Lodge v. Massachusetts Bonding and Insurance Company (Mo.), 25 S. W. (2d) 783, our Supreme Court en banc said:

"The rule in this state is that representations, in order to avoid a contract or bond, must have been fraudulently made. Intentional fraud is essential to an action or defense of deceit or misrepresentations."

Defendant relies on Kirk v. Metropolitan Life Insurance Company (Mo.), 81 S. W. (2d) 333. In that case the court holds that a material misrepresentation avoided a life policy providing that no obligation exists unless the insured is in good health at the time of the issuance of the policy. There is no such provision in the policy here in suit.

So, in Pacific Mutual Life Insurance Co. v. Glaser, 245 Mo. 377, 150 S. W. 549, relied on by defendant, the application expressly warranted that all statements and answers made in the application were complete, true, and correct, and that if any such statement or answer were incomplete, untrue, or incorrect, no valid claim could arise under the policy on account of the death of the insured. There is no such warranty in the application or policy here in suit. On the contrary, the policy expressly provides that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties.

In the Kirk case the fundamental principle on which the case was ruled is found in the following language:

"The insurer agreed to assume liability only upon condition that the insured should be, not merely believe herself to be, in sound health when the policy was issued, and the premium was fixed upon that basis."

So, in Woods v. National Aid Life Association (Mo. App.), 87 S. W. (2d) 698, the Springfield Court of Appeals, discussing the Kirk case, said:

"When the cause reached the Supreme Court, the ruling of the Kansas City Court of Appeals was disapproved and the Supreme Court definitely settled the question by holding that *material misrepresentations* will void a life policy, however innocently made, and the insured's innocence will not void the defense in a suit *where the policy provides that such misrepresentations will void the policy.*" (Italics ours.)

The rule in this State, as we understand it, is that where material representations made in an application for a policy of life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made. This is so because such is the contract. The insurer is entitled to stand on the contract as written, and the innocence of the insured in making the representations is a matter of no concern. But where there is no such warranty or provision in the policy a misrepresentation in order to avoid the policy must have been fraudulently made. This is the rule applicable to contracts generally, and we see no reason why an exception should be made with respect to insurance contracts.

We are not concerned here with a policy providing that the policy shall not be effective, or that there shall be no liability, unless the insured was in sound bodily health at the time of the issuance of the policy. Of course, where the policy so provides and it turns out that the insured was not in sound bodily health at the time of the issuance of the policy, but was suffering with the disease which caused his death, there is no liability. This is so because such is the contract.

Defendant invokes the rule, announced in the decisions, that the statute, section 5732, Revised Statutes 1929, Mo. St. Ann., sec. 5732, p. 4373, providing that no misrepresentations made in obtaining or securing a policy of life insurance shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, applies alike to warranties and representations, and draws no distinction between innocent and fraudulent misrepresentations. We are unable to see how this rule helps defendant. Obviously, the statute does not disturb the law of insurance contracts except in that it avoids defenses founded on misrepresentations when the matter misrepresented does not contribute to the contingency or event on which the policy is to become due and payable. The purpose of the statute is to aid, not to hinder, the insured—to limit, not to extend, the rights of the insurer.

Of course, it may not be said as a matter of law, under the evidence in the present case, that the representation of the insured that she was not suffering with cancer was fraudulently made. The evidence does not show that she knew, either before or after the making of her application, tha' she was suffering with cancer. On the contrary, the testimony shows tha' she was purposely kept in ignorance of it. Even if it may be said as a matter of law that she was suffering with cancer at the time of the making of her application, surely, it may not be said as a matter of law that she knew it.

However, defendant contends that the representations of the insured

in her application that she had not been attended by a physician, and had not had any treatment in a hospital, within the last five years, were necessarily fraudulent. In considering this contention it should at the outstart be observed that if the insured was not in fact suffering with cancer at the time she made the representations complained of, the representations were not material, because they did not operate to conceal a diseased condition which contributed to her death.

Moreover, the representation that she had not had any treatment in a hospital within the last five years was not untrue, for the evidence shows that she received no treatment until long after the making of the application and the issuance of the policy. Nor was the representation that she had not been attended by a physician necessarily untrue or fraudulent. It is pertinent to observe in this connection that questions answered in an application for insurance prepared and submitted by the insurer are always strictly construed against the insurer. To have been "attended by a physician" within that term as used in an application, there must have been an attendance with reference to some disease or ailment of a serious character, affecting the person's sound bodily health, and not in relation to a mere temporary indisposition or an ailment trivial in its nature. [Plump v. Penn Mutual Life Ins. Co., 108 Mich. 94; Sovereign Camp W. O. W. v. Brown, 94 Okla. 277; Billings v. Metropolitan Life Ins. Co., 70 Vt. 477.] If, therefore, the insured was not in fact suffering with cancer the representation that she had not been "attended by a physician" was not untrue within the meaning of that term as used in the application. But if she was in fact suffering with cancer it does not necessarily follow that the representation was fraudulent. For, as already said, if she was suffering with cancer she did not know it, but was purposely kept in ignorance of it, and we do not believe that under such circumstances she may be convicted of fraud as a matter of law for assuming that her ailment was not of a serious character but was merely temporary or trivial in its nature.

Plaintiff made a *prima-facie* case by introducing the policy showing he was the beneficiary and by showing the insured's death while the policy was in force. The defendant undoubtedly recognized this, because it offered no demurrer to the evidence at the close of plaintiff's case. After such a showing by plaintiff, the burden was upon defendant to prove the misrepresentations pleaded in its answer and that the matter misrepresented contributed to cause her death. [Streeter v. Washington Fidelity National Insurance Co. (Mo. App.), 68 S. W. (2d) 889.]

Defendant places much reliance upon the recent case of State ex rel. Bowdon v. Allen (Mo.), 85 S. W. (2d) 63, wherein our Supreme Court, speaking through Judge HAYS, said:

"The general rule as summed up in the Peterson Case is, that

'after a *prima-facie* case has once been made out, the case can never be taken from the jury.'

"Doubtless the relator is relying upon this last-stated rule. But, as is pointed out in Wendorff. v. Missouri State Life Ins. Co., 318 Mo. 363, 369, 1 S. W. (2d) 99, 101, 57 A. L. R. 615, 'the rule has its exceptions. When the proof is documentary, or the defendant relies on the plaintiff's own evidential showing (or evidence which the plaintiff admits to be true), and the reasonable inferences therefrom all point one way, there is no issue of fact to be submitted to the jury."

We can see nothing in that case at war with the views we have herein expressed.

The instruction in the nature of a demurrer to the evidence was properly refused.

Other assignments of error, relating to the admission of evidence and rulings on instructions, are put on the assumption that misrepresentations of the insured, though innocently made will defeat her recovery, and are necessarily ruled against defendant by what we have already said.

The next and last contention of the defendant is that there was no evidence justifying the jury's finding of a vexatious refusal to pay.

The rule which should govern in determining whether or not a refusal to pay is vexatious is stated by our Supreme Court, in Grand Lodge v. Massachusetts Bonding and Insurance Co. (Mo.), 25 S. W. (2d) 78:;, as follows:

"And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention is not reason for inflicting the penalty."

While the facts in the present case are not such as to defeat a recovery on the policy as a matter of law, obviously they do not warrant a finding of vexatious refusal to pay.

We think the judgment is excessive to the extent of $150 assessed as attorneys' fees.

The Commissioner accordingly recommends that if plaintiff will, within ten days, remit the sum of $150, the judgment of the circuit court be reversed and the cause remanded with directions that a new judgment be entered in favor of plaintiff and against the defendant for $1,090, with interest thereon at the rate of six per cent per annum from October 31, 19\3\3, the date of the original judgment; otherwise that the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is

accordingly reversed and the cause remanded conditionally as recommended by the Commissioner. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.

## ON MOTION FOR REHEARING.

Defendant insists that our original opinion is in conflict with State ex rel. Metropolitan Life Insurance Company v. Allen (Mo.), 276 S. W. 877. That case is very different on its facts from the case at bar. It was clearly ruled, on the theory that the misrepresentations complained of were fraudulently made. The court said "This case, phrase the facts as you may, bristles with fraud." It is obvious that the court does not hold that a representation innocently made amounts to a warranty that the representation is true as a necessary condition to procuring the policy. The court could not have so held in the face of the policy which expressly provides, as does the policy here under review, that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

It is true, as urged by defendant, that the application in this case contains a clause to the effect that the statements in the application shall form the basis of the contract of insurance, but notwithstanding this clause the statements, under the express provision of the policy, in the absence of fraud, must be deemed representations and not warranties. So, they must be treated as representations and must be disposed of under the law applicable to representations. So treating them they are ineffectual to avoid the policy unless fraudulently made. It is important to observe that the language of the policy is not merely that the statements shall not be deemed warranties, but the language goes further and affirmatively declares that the statements shall be deemed representations. By what rule of construction then may this court convert such statements into warranties or conditions avoiding the policy?

We have said that the Allen case does not hold that an innocent misrepresentation avoids the policy, but if it does so hold, it is out of accord with the more recent decision of the Supreme Court en banc in Grand Lodge v. Massachusetts Bonding and Insurance Company, cited and quoted in our original opinion.

The Commissioner recommends that defendant's motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. Defendant's motion for rehearing is accordingly overruled. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.