657 F.Supp. 164 (1987)
GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Plaintiff,
v.
Rita C. TREFTS, et al., Defendants.
No. 86-0138C(3).
United States District Court, E.D. Missouri E.D.
March 13, 1987.
Clark H. Cole and George M. von Stamwitz, St. Louis, Mo., for plaintiff.
F. William McCalpin, Lewis & Rice, William G. Buchholz, II, Levin & Buchholz and *165 William K. Meehan, St. Louis, Mo., for defendants.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court to determine the merits of plaintiff's claims after a two-day trial before the Court sitting without a jury.
Plaintiff brings this declaratory judgment action seeking resolution of coverage issues under a policy of lawyers professional liability insurance. Plaintiff claims that neither defendant Leadlove nor defendant Lashly, Baer & Hamel, P.C. (Lashly), is entitled to coverage under plaintiff's insurance policy with respect to the malpractice claim of defendant Rita Trefts because (a) the claim occurred prior to the policy's effective date; and (b) alleged misrepresentations were made in the application for insurance.[1]
Having considered the pleadings, trial testimony, exhibits, stipulations, and memoranda of the parties, the Court hereby makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff is a corporation duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the City of Philadelphia, Pennsylvania.
2. Defendant Rita C. Trefts is an individual residing in the County of St. Louis, Missouri, and is a citizen of the State of Missouri.
3. Defendant Lashly, Baer & Hamel, P.C., is a professional corporation duly organized and existing under the laws of the State of Missouri, with its principal place of business in the City of St. Louis, Missouri.
4. Defendant Earle Leadlove (Leadlove) is an individual residing in the County of St. Louis, State of Missouri, and is a citizen of the State of Missouri.
5. Defendant Leadlove is an attorney who formerly practiced law with the firm of Lashly, Caruthers, Baer & Hamel, P.C., a predecessor to the firm of Lashly, Baer & Hamel, P.C.
6. The value of the relief sought by plaintiff exceeds $10,000.
7. On May 18, 1984, defendant Lashly submitted its application for lawyers professional liability insurance to plaintiff.
8. Question 5(a) of the application for insurance states that the applicant should: "Complete Named Insured Supplement." The response to 5(a) identifies all the lawyers in the firm, including Leadlove.
9. Question 9 of the completed application has the following information:
(a) Has any lawyer named in Question 5(a) ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance? ___ Yes
X No. If yes, please explain.
(b) Has any lawyer named in Question 5(a) ever been the subject of reprimand or disciplinary action or refused admission to the bar by any bar association, court or administrative agency as a result of professional activities? ___ YES
X NO. If yes, please explain ______
(c) Has any professional liability claim or suit ever been made against any lawyer named in Question 5? X YES ___ NO. If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim in order for your application to be considered.
(d) Does any lawyer named in Question 5(a) know of any circumstances, act, error or omission that could result in a professional liability claim against him or his predecessors in business? ___ YES X NO. If yes, please give full details FOR EACH INCIDENT by attachment.
The "supplemental claim information" form submitted with the application provides information regarding a claim filed in *166 1984 by a person other than defendant Trefts against defendant Leadlove arising out of professional services rendered by defendant Leadlove.
10. Testimony of record indicates that question 9(d) was construed to require information of which a named insured lawyer would have actual knowledge, for instance if a client had stated a circumstance might lead to a malpractice claim or dispute.
11. In a paragraph before the signature line, the application states:
NOTICE TO APPLICANT:
WARRANTY: I/We warrant that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company/Underwriters evidence its acceptance of this application by issuance of a policy.
12. Plaintiff issued and delivered to defendant Lashly, for good and valuable consideration, lawyers professional liability insurance policy no. CZ 100352, effective June 1, 1984, to June 1, 1985.
13. The policy issued by plaintiff is a "claims made" policy which provides coverage only for those claims that were first made against the insured during the relevant policy period of June 1, 1984, to June 1, 1985.
14. Defendant Leadlove is a named insured under the policy, as was indicated in the application.
15. In relevant part, the policy provides the following coverage:
1. The Company will pay on behalf of the Insured all sums in excess of the deductible which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD by reason of:
(a) Professional Liability:
Acts in the performance of professional services for others by the Insured;
* * * * * *
PROVIDED, the Firm's management committee or governing body, however designated, or any member thereof was without reasonable basis to believe that on the effective date of this policy any Insured had breached a professional duty or committed a personal injury.
Act means any act, omission or breach or neglect of duty or obligation in the performance of professional services or any personal injury.
Claim means a demand received by the Insured for money or services, including the service of suit, the institution of arbitration proceedings or the institution of proceedings or the service of suit by a governmental agency seeking non-pecuniary relief.
Damages means a monetary judgment, award or settlement and does not include fines, statutory penalties, the restitution of consideration and expenses paid to the Insured for services or goods, or judgments or awards arising from Acts deemed uninsurable by law.
* * * * * *
2. Defense and Settlement of Claims:
(a) The Company will defend any claim made against the Insured brought anywhere in the world, provided that coverage is afforded by the policy, even if the allegations of the claim are groundless, false or fraudulent.
16. On June 1, 1984, the effective date of the policy, neither the Lashly firm's board of directors, constituting the governing body, nor any member thereof, had any reasonable basis to believe that any insured had violated a professional duty or committed a personal injury towards Rita Trefts. Defendant Leadlove was not on the board of directors at that time.
17. Thereafter, defendant Leadlove received a letter from the law firm of Levin, Crowe & Buchholz, dated January 29, 1985, in which the claims of defendant Trefts against defendant Leadlove were first asserted. In particular, the letter stated:
This firm represents Mrs. Rita C. Trefts with regard to malpractice claims against you, your former law firm and your present law firm.
The claims arise out of two (2) separate instances. The first instance is with regard to your representation of Mrs. *167 Trefts in defense of a hospital bill owed to DePaul Community Health Center....
The second instance regards your representation of Mrs. Trefts in defense of foreclosure on her interest in some property located in Pima County, Arizona.
18. Defendant Lashly received from the law firm of Levin, Crowe & Buchholz a letter dated May 6, 1985, which reported on the circumstances and status of defendant Trefts' "potential legal malpractice claims" against defendant Leadlove. The malpractice claims reportedly arise out of defendant Leadlove's representation of defendant Trefts from about 1981 through early 1984. Defendant Lashly forwarded this letter to plaintiff.
19. At no time prior to plaintiff's issuance of insurance policy no. CZ 100352 did defendants Lashly or Leadlove receive from defendant Trefts a demand for money or services, nor was there instituted any suit or arbitration proceeding by defendant Trefts or by a governmental agency seeking non-pecuniary relief on account of defendant Leadlove's representation of defendant Trefts.
20. There is some testimony of record indicating that in April 1982 defendant Trefts may have conveyed, either personally or through her son, to defendant Leadlove a desire to correct a default and foreclosure in Arizona litigation regarding real estate transactions in which defendant Leadlove had provided some professional services.[2] The Court is mindful that Trefts' own testimony in this declaratory judgment proceeding brought by the professional liability insurance carrier must be weighed carefully in light of Trefts' apparent interest in pursuing any malpractice claim against an insured under the policy. The Court has carefully weighed this and related evidence and determines that, for purposes of this proceeding only, the communications by defendant Trefts in April 1982 did not give Leadlove, at that time, knowledge of a potential malpractice claim against him by defendant Trefts. Nor does this evidence persuade the Court that defendant Leadlove should have gleaned from the circumstances that there was a potential malpractice claim in the offing. The relevant evidence does not clearly reflect dissatisfaction with Leadlove's services, so much as dissatisfaction with the result obtained.
21. Defendant Lashly and defendant Leadlove have tendered the defense of defendant Trefts' claims to plaintiff under its policy.
22. Plaintiff has failed and refused to provide defendants Lashly and Leadlove with a defense to the Trefts claims and to indemnify these defendants against liability as to any such claims.
23. The malpractice claims of Rita Trefts were made within the policy coverage period.

Conclusions of Law
1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and venue is proper in the Eastern District of Missouri.
2. The Court recognizes that virtually any circumstance, act, error, or omission in the course of legal representation could result in a professional liability claim being made against the lawyer by a disappointed client, but that not all do. The Court construes Question 9(d) of the application at issue here to require disclosure of circumstances, acts, errors, or omissions that could result in a professional liability claim only in those circumstances when a client has given to the lawyer some indication through a complaint or expression of dissatisfaction with his services that a claim might or would be made. See Fremont Indem. Co. v. Lawton-Byrne-Bruner Ins. Agency Co., 701 S.W.2d 737, 742-43 (Mo. App.1985).
*168 3. In view of the finding that neither Trefts nor her son had voiced a complaint or dissatisfaction to Leadlove with respect to his services prior to June 1, 1984, Lashly's answer to Question 9(d) on the application was not inaccurate.
4. Since no professional liability claim was made or suit was filed by Trefts prior to the effective date of the policy, Lashly's response to Question 9(c) in the application was not inaccurate.
5. The lack of any claim before June 1, 1984, and the letter assertion of a potential claim in January 1985, during the policy period, renders Trefts' claim(s) against Leadlove amenable to coverage under plaintiff's professional liability insurance policy no. CZ 100352.
6. Plaintiff has failed to prove by a preponderance of the evidence that Lashly is not entitled to coverage under policy no. CZ 100352.
7. Lashly and Leadlove are entitled to plaintiff's defense and coverage, pursuant to policy no. CZ 100352, of defendant Trefts' malpractice claims against defendant Leadlove as first raised in the January 29, 1985, letter to defendant Leadlove.
Accordingly, judgment will be entered in favor of defendants Lashly and Leadlove and against plaintiff.
Nothing herein shall be construed as an interpretation or determination of the merits of any malpractice claim defendant Trefts may assert against defendant Leadlove. Nor is the Court placing its imprimatur of approval on Leadlove's conduct on behalf of defendant Trefts as indicated of record.
NOTES
[1] Plaintiff's post-trial memoranda state plaintiff is no longer seeking relief under Count III of the complaint. Plaintiff's response to Lashly, Baer & Hamel, P.C.'s post-trial memorandum of law at 7, dated February 15, 1986. See also plaintiff's post-trial memorandum of law at 1, dated December 5, 1986. Accordingly, the Court will not now consider that Count.
[2] Plaintiff also presented some evidence of communications between attorneys regarding Trefts' potential malpractice claims against Leadlove which, plaintiff contends, must have occurred before June 1, 1984, the effective date of the policy. The Court does not find the evidence as to the probable date(s) of such communications credible. Thus, the Court is not persuaded those communications evince knowledge prior to June 1, 1984, of any potential malpractice claim by Trefts against Leadlove.