CONTINENTAL CASUALTY
COMPANY, Respondent,

v.

H. James MAXWELL, et al.,
Appellants,

Northwestern National Casualty
Company, Respondent.

No. WD 42326.

Missouri Court of Appeals,
Western District.

Oct. 23, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 4, 1990.

Application to Transfer Denied
Jan. 9, 1991.

Joseph W. Amick, Kansas City, Brice A. Tondre, Madden & Strate, P.C., Wheat Ridge, Colo., for appellants.

Thomas B. Alleman, Bill W. Richerson, Niewald, Waldeck, Norris & Brown, P.C., Kansas City, for respondent Continental Cas. Co.

David R. Buchanan, Michael A. Childs, Brown, James & Rabbitt, P.C., Kansas City, for respondent Northwestern Nat. Cas. Co.

Before ULRICH, J., Presiding and SHANGLER and TURNAGE, JJ.

ULRICH, Presiding Judge.

H.J. Maxwell, Joseph Stokley, Alfalfa Cubes, Inc., (Alfalfa), and Lucas Invest-

ments, Inc., (Lucas) appeal summary judgments denying their claims that respondents Continental Casualty Company (Continental) and Northwestern National Casualty Company (Northwestern) are liable for damages under professional liability policies issued by the insurance companies for damages resulting from the insured's legal malpractice. Alfalfa and Lucas retained the law firm of H. James Maxwell and Associates to represent them in a public stock offering. During the course of this representation, a potential professional liability claim arose. On appeal, appellants contend that the trial court erred in granting Continental and Northwestern summary judgments because Continental failed to demonstrate that it was prejudiced by receiving notices of the pending malpractice suit after the policy period expired and material issues of fact exist concerning Northwestern's motion for summary judgment. Judgment for Continental and Northwestern is affirmed.

In September 1983, Alfalfa and Lucas retained the law firm of H. James Maxwell and Associates to represent them in a public stock offering. In the course of representing Alfalfa and Lucas, the law firm filed a registration statement on its client's behalf. In 1984, at the insistence of Mr. Maxwell, Alfalfa and Lucas withdrew the registration statement because a conflict of interest on the part of the president of the two offering companies was revealed. Alfalfa and Lucas aborted their public stock offering plan.

At the time the registration statement was withdrawn, Alfalfa and Lucas owed approximately $7,000 to H. James Maxwell and Associates for legal services performed in connection with the public stock offering. After the offering was aborted, the law firm demanded that Alfalfa and Lucas pay the balance due. Eventually, on April 9, 1984, Mr. Maxwell filed suit in the Circuit Court of Jackson County, Missouri against Alfalfa and Lucas to collect the unpaid attorneys fees. In June 1984, Alfalfa filed a counterclaim to Mr. Maxwell's

suit alleging that Mr. Maxwell breached his contract with Alfalfa "by failing to perform the legal services as required under the contract, by failing to make the necessary investigation and review of documents submitted by [Alfalfa] and others, [and] by failing to disclose to the corporation and its principals certain material facts...."

From November 1, 1983 through November 1, 1984, Continental insured H. James Maxwell and Associates under a professional liability insurance policy. The policy issued by Continental provides in pertinent part that "[t]he insured shall, as a condition precedent to their rights under this policy, give written notice as soon as practicable to the company of a claim made against the insured, provided that ... this *notice must be during this policy period* or any applicable extended reporting period." (Emphasis added.) No extended reporting period applied to the policy at issue here. The policy period ended November 1, 1984. H. James Maxwell and Associates did not notify Continental of Alfalfa's counterclaim prior to this date.

In September 1984, H. James Maxwell and Associates applied for professional liability insurance with Northwestern. In the application, Mr. Maxwell denied the existence of any professional liability claim or suit against him or any other lawyer in the firm and denied knowledge of any circumstances which could result in a professional liability claim. After receiving the application from Mr. Maxwell, Northwestern issued a professional liability insurance policy to H. James Maxwell and Associates with coverage commencing November 1, 1984.

On April 2, 1985, Alfalfa and Lucas filed a lawsuit in the District Court of Russell County, Kansas, against Mr. Maxwell and Mr. Stokley, an associate with the law firm. In the Kansas suit, Alfalfa and Lucas alleged that Mr. Maxwell and Mr. Stokley were negligent and breached their fiduciary duty while representing them in the public stock offering. On April 19, 1985, Mr. Maxwell forwarded the petition in the

Kansas suit to Northwestern to facilitate Northwestern providing him a defense under the firm's current professional liability policy with Northwestern. Mr. Maxwell did not forward a copy of the Kansas petition to Continental.

Northwestern initially provided Mr. Maxwell and Mr. Stokley a defense in the Kansas action with reservation of rights. Following the commencement of this defense, Northwestern learned of Alfalfa's counterclaim filed in the Missouri action in June 1984, prior to Mr. Maxwell completing the application for insurance with Northwestern. Northwestern believed that the policy issued to H. James Maxwell and Associates was voidable due to the possible misrepresentation in the application concerning the non-existence of any potential professional liability claims but agreed to proceed with a defense in the Kansas suit if Mr. Maxwell executed an exclusionary rider. On December 27, 1985, Mr. Maxwell endorsed the exclusionary rider wherein he agreed not to hold Northwestern liable for any acts or omissions pertaining to H. James Maxwell and Associates' representation of Alfalfa and Lucas.

On August 19, 1985, Alfalfa and Lucas filed an amended counterclaim against Mr. Maxwell in the Missouri case wherein they alleged that he breached his fiduciary duty and negligently performed in representing them in the public stock offering. The amended counterclaim prayed for $2,000,000 in damages. Mr. Maxwell first notified Continental of the counterclaim in the Missouri suit on September 23, 1985. Continental denied an obligation to defend or indemnify Mr. Maxwell for the Missouri suit on the ground that he had not complied with the terms of the policy by failing to report the claim during the policy period. On January 9, 1986, Alfalfa and Lucas again amended their counterclaim in the Missouri suit to allege that Mr. Stokley also breached his fiduciary duty and negligently performed in representing the parties. Continental denied a defense or indemnity to Mr. Stokley for the Missouri

suit for the same reason it denied coverage to Mr. Maxwell.

Following these events, Mr. Maxwell and Mr. Stokley entered into a settlement agreement with Alfalfa and Lucas. Under the terms of the settlement, Alfalfa and Lucas dismissed their claims against Mr. Maxwell and Mr. Stokley in the Missouri case and took a consent judgment for $600,000 against Mr. Maxwell and Mr. Stokley in the Kansas case. As part of the settlement agreement, Mr. Maxwell and Mr. Stokley also assigned their rights under the professional liability policies with Continental and Northwestern to Alfalfa and Lucas in exchange for their promise not to execute against any of Mr. Maxwell's or Mr. Stokley's personal assets.

After judgment was entered in the Kansas case and the Missouri case was dismissed, Alfalfa and Lucas demanded that Continental and Northwestern satisfy the $600,000 judgment. Continental responded by filing this declaratory judgment action seeking a declaration that no coverage exists under the professional liability policy. Northwestern joined this declaratory judgment action also seeking a declaration of no coverage. All parties to the declaratory judgment action filed motions for summary judgment. The trial court granted Continental's and Northwestern's motions for summary judgment and appeal is taken from these judgments.

On appeal Mr. Maxwell, Mr. Stokley, Alfalfa and Lucas contend that the trial court erred in granting Continental's and Northwestern's motions for summary judgment. They claim (1) Continental failed to demonstrate that it was prejudiced by receiving notice of the counterclaim after the policy period expired; (2) a material issue of fact exists as to whether Mr. Maxwell materially misrepresented to Northwestern the nonexistence of any potential professional liability claims; (3) a material issue of fact exists as to whether the exclusionary rider issued by Northwestern was induced by economic duress or supported by legal consideration; (4) Mr. Maxwell exceeded his

scope of authority by endorsing the exclusionary rider and thus binding Mr. Stokley to its terms; (5) a material issue of fact exists as to when the malpractice claim was made; and (6) the trial court erred in denying appellants' motion for summary judgment. Because the court's opinions on points (1) and (2) are dispositive, the remaining issues are not addressed.

## I

First considered is appellants' contention that the trial court erred in granting summary judgment for Continental because Continental failed to demonstrate that it was prejudiced by receiving Mr. Maxwell's and Mr. Stokley's notices of the counterclaim in the case filed in Missouri after the policy period expired. Missouri courts have required insurance companies to demonstrate that they are prejudiced by receiving late notice of a claim before allowing the companies to avoid coverage under a policy because of the late notice. *See Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 32 (Mo.1969), and *Dickhans v. Missouri Property Ins. Placement Facility*, 705 S.W.2d 104, 106–07 (Mo.App.1986). Appellants urge this court to apply this requirement to the insurance policy issued by Continental.

At least two types of professional liability insurance policies are issued—a claims made policy and an occurrence policy. An occurrence policy covers negligent acts or omissions which occur within the policy period, regardless of the date when the negligent acts or omissions are discovered or claim is made. *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 514 (Fla.1983). In a claims made policy the coverage is effective when the negligent or omitted act is discovered and brought to the attention of the insurer regardless of when the act of omission occurred. *Id.* (quoting 7a Appleman, *Insurance Law and Practice* 312 (Berdal Edition 1979)). The basic distinction between claims made and occurrence policies is that while the occur-

rence policy is triggered by the insured's liability-producing conduct, the claims made policy is triggered by the presentation of a claim. Goldfein, *Legal Malpractice Insurance*, 61 Temple L.Rev. 1285, 1287–88 (1988). Thus, claims made policies allow insurers to calculate precisely the risk for a particular year because the insurer knows the exact number of claims at the end of any given policy period. *Id.* at 1288.

The policy issued to H. James Maxwell and Associates by Continental is a claims made policy. The policy only provides coverage for claims made during the policy period and requires that the insured provide Continental with notice during the policy period. Mr. Maxwell and Mr. Stokley did not notify Continental of the counterclaim in the Missouri suit until after the policy period ended. The issue presented is whether Missouri law requires insurance companies to demonstrate that they are prejudiced when receiving notice of a claim after the policy period ends under a claims made policy.

In *Esmailzadeh v. Johnson and Speakman*, 869 F.2d 422 (8th Cir.1989), the court considered whether Minnesota's similar rule requiring insurance companies to demonstrate prejudice applies to claims made policies. *Id.* at 424. The Eighth Circuit noted that "[b]ecause the reporting requirement helps to define the scope of coverage under a claims-made policy, several courts have held that excusing a delay in notice beyond the policy period would alter a basic term of the insurance contract." *Id.* The Eighth Circuit, in determining that prejudice requirements are not applicable to claims made policies, found that insurance companies clearly disclaimed the risk of receiving untimely notice under a claims made policy. *Id.* at 425.

The New Jersey Supreme Court also considered whether the law requires insurance companies to prove prejudice in order to avoid coverage under a claims made policy when a claim is reported after the policy period expires. *Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d

395, 405 (1985). The New Jersey Supreme Court stated:

> [T]he event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, *gratis,* resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by "claims made" policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of "claims made" insurance.

*Id.* at 406. Noting the differences between occurrence and claims made policies, the court in *Zuckerman* held that insurance companies were not required to prove prejudice when receiving late notice of a claim under a claims made policy. *Id.*

■ Continental only agreed to indemnify Mr. Maxwell and Mr. Stokley for claims which were made and reported to the insurer during the policy period. The very essence of a claims made policy is notice to the carrier within the policy period. *Gulf Ins. Co. v. Dolan, Fertig and Curtis,* 433 So.2d at 514. The attorneys failed to properly report the claim during the policy period. This court concludes that Missouri law does not require that insurance companies prove they are prejudiced to avoid coverage when notice of a claim is received after the claims made policy's coverage period has ended and the policy requires that all claims be reported within the policy's coverage period. The law does not require that Continental demonstrate it was prejudiced by receiving notice of the counterclaim after the policy period ended. Appellants' first point is denied.

## II

■ Appellants next contend that the trial court erred in granting Northwestern's motion for summary judgment because material issues of fact exist with respect to whether Mr. Maxwell materially misrepresented to Northwestern the non-existence of a potential professional liability claim in the insurance application. Appellate review of a trial court's order granting summary judgment is made of the entire record construed in the light most favorable to the party against whom summary judgment is rendered. *Abbate v. Tortolano,* 782 S.W.2d 810, 811 (Mo.App.1990).

In June 1984, Alfalfa filed a countersuit to Maxwell's claim for overdue attorneys' fees wherein Alfalfa alleged that Maxwell breached his contract with Alfalfa by failing to perform the legal services required by the contract, by failing to make a proper investigation and by failing to disclose material facts to Alfalfa. In September 1984, Maxwell completed the Northwestern application for insurance and denied knowledge of any circumstances which could result in a professional liability claim. According to Mr. Maxwell's deposition testimony, he and Mr. Stokley discussed the counterclaim filed in the Missouri case, considered its effect on premiums, but concluded that the counterclaim had nothing to do with errors and omissions on their part and decided not to reveal the counterclaim in the application. Based upon the attorneys' belief that the counterclaim was not and would not become a professional liability claim, appellants contend the trial court erred in determining the failure to disclose the counterclaim was a material misrepresentation.

■ The applicable doctrine of law regarding misstatements in applications for insurance was first articulated by the Missouri courts in *Houston v. Metropolitan Life Ins. Co.,* 232 Mo.App. 195, 97 S.W.2d 856 (1936). In *Houston,* the court stated:

> [W]here material representations made in an application for ... insurance are warranted to be true, or the policy is

conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made.... But where there is not such warranty or provision in the policy a misrepresentation, in order to avoid the policy must have been fraudulently made.

*Id.* at 860. To prove a fraudulent misrepresentation the insurer must demonstrate, among other things, that the insured knowingly made a false statement with the intent to deceive the insurance company. *Coonce v. National Indemnity Co.,* 213 F.Supp. 483, 486 (E.D.Mo.1962).

▮▮▮ Missouri law also allows an insurance company to avoid a policy when the application, containing a material misrepresentation, is incorporated by reference into and attached to the policy. *See Coonce,* 213 F.Supp. at 486; *Taylor v. Black,* 258 F.Supp. 82, 86 (E.D.Mo.1966). *See also* Appleman, *Insurance Law,* § 7308; 45 C.J.S. § 473(4)(c). Thus, Missouri law requires the insurance company demonstrate that a representation is both false and material in order to avoid the policy when (1) the representation is warranted to be true, (2) the policy is conditioned upon its truth, (3) the policy provides that its falsity will avoid the policy, or (4) the application is incorporated into and attached to the policy. Otherwise, the insurance company must demonstrate that the representation in the application was false and fraudulently made in order to avoid the policy.

Some confusion may exist regarding the distinctions between material misrepresentation and fraudulent misrepresentation. Some courts have perceived the Eighth Circuit case of *American Fire and Indemnity Co. v. Lancaster,* 415 F.2d 1145 (1969), to stand for the position that where a representation is not warranted and not incorporated into the policy the insurer must only demonstrate that the representation is false and material to the risk to avoid the policy.[1] However, the Eighth Circuit reached its conclusion in *Lancaster* relying upon *Dixon v. Business Men's Assurance Co. of America,* 365 Mo. 580, 285 S.W.2d 619 (banc 1956). *Lancaster,* 415 F.2d at 1149. In *Dixon,* the Missouri Supreme Court quoted the pronouncement of Missouri law in *Houston* as set forth above. *Dixon,* 285 S.W.2d at 625. *Lancaster* is to be understood as holding that representations not warranted to be true and not incorporated into the policy must have been made fraudulently in order to avoid the insurance policy. Similarly, *Lancaster* is understood to comport with Missouri law which provides that a non-fraudulent material misrepresentation incorporated into the policy or warranted may void the policy.

As announced in *Dixon* and *Houston,* Northwestern must either demonstrate that the representation in the application was material and false and was made a part of the policy, was warranted as true, the policy was conditioned on its truth, the policy provided its falsity would avoid the policy, or that it was incorporated into and attached to the policy. Alternatively, Northwestern must demonstrate the representation was false and fraudulent to avoid the policy. The insurance policy issued to H. James Maxwell and Associates from Northwestern refers to the statements made in the application and the application is attached to and made a part of the policy. Thus, under the standards set forth above, Northwestern, to avoid the policy, must demonstrate that Mr. Maxwell's statement concerning the nonexistence of any potential professional liability claims was both false and material to

---

**1.** *See Weekly v. Missouri Property Ins. Placement,* 538 S.W.2d 375, 378 (Mo.App.1976), which cites *Lancaster. See also Galvan v. Cameron Mut. Ins.,* 733 S.W.2d 771, 773 (Mo.App. 1987); *Crewse v. Shelter Mut. Ins. Co.,* 706 S.W.2d 35, 38 (Mo.App.1985); and *Haynes v. Missouri Property Ins. Placement Facility,* 641 S.W.2d 497, 499 (Mo.App.1982), which restate the language initially articulated in *Lancaster.*

the issuance of the professional liability policy.

Question 7(d) of the application for insurance completed by Mr. Maxwell asked whether "any lawyers named in [the application] know of any circumstances, act, error or omission that could result in a professional liability claim against him or his predecessors in business?" The federal district court for the Eastern District of Missouri interpreted a similar question in an application for professional liability insurance as requiring "disclosure of circumstances, acts, errors, or omissions that could result in a professional liability claim ... in those circumstances *when a client has given to the lawyer some indication through a complaint or expression of dissatisfaction with his services that a claim might or would be made.*" *General Accident Ins. Co. of America v. Trefts*, 657 F.Supp. 164, 167 (1987) (emphasis added). Mr. Maxwell and Mr. Stokley contend that in September 1984 the counterclaim only represented a dispute as to fees. That the dispute, at the time Mr. Maxwell completed the application, was couched in the terms of a fee dispute is not controlling because a circumstance existed which could have resulted in a claim. *See Professional Managers, Inc. v. Fawer, Brian, Hardy, and Zatzkis*, 799 F.2d 218, 224 (5th Cir.1986). By filing the counterclaim, Alfalfa had undeniably notified the attorneys that it was dissatisfied with their services. Mr. Maxwell's answer to the question on the application was false. The evidence clearly shows Mr. Maxwell knew of a circumstance which could, and indeed did, result in a professional liability claim.

Whether the false answer given in the application for insurance was material is the next question considered. Generally, "a misrepresentation is deemed material where it is reasonably calculated to affect the action and conduct of the company in deciding whether or not to accept the risk by issuing its policy covering the risk." *Brinkoetter v. Pyramid Life Ins. Co.*, 377 S.W.2d 560, 563 (Mo.App.1964). Trivial matters are ordinarily deemed not material. *Id.*

Admittedly, the question of materiality is generally a question of fact for the jury but when the misrepresentation is of such a nature that all minds would agree it is or is not material the question is appropriate for summary judgment. *Buck v. American States Life Ins. Co.*, 723 F.Supp. 155, 161 (E.D.Mo.1989). There are some circumstances in which the materiality of a misrepresentation is so clear that it should be declared material as a matter of law. *See Bearden v. Countryside Casualty Co.*, 352 S.W.2d 701, 707–08 (Mo.App.1961), and *Smith v. American Automobile Ins. Co.*, 188 Mo.App. 297, 175 S.W. 113, 115 (1915). This is just such an instance. When an attorney-litigant, sued by counterclaim in a dispute arising out of an attorney-client relationship, inaccurately represents on an application for professional liability insurance the nonexistence of circumstances which could result in a malpractice claim, the inaccuracy of that answer is material to the issuance of the policy as a matter of law. Northwestern may avoid coverage under the policy because a material misrepresentation existed in the application which was subsequently incorporated into and attached to the insurance policy issued to the attorneys.

Summary judgments in favor of Continental and Northwestern were proper. If summary judgment is sustainable on any theory, the trial court's judgment will be sustained. *Abbate v. Tortolano*, 782 S.W.2d at 811–12. Because the trial court's summary judgment in favor of Northwestern is sustained, due to the material misrepresentation which was incorporated into and attached to the policy in the application, appellants' other points on appeal challenging this summary judgment need not be reached.

Judgment is affirmed.

All concur.