Fannie L. HAMAN, Plaintiff-Respondent,

v.

PYRAMID LIFE INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. 7912.

Springfield Court of Appeals.

Missouri.

June 5, 1961.

Oliver & Oliver, Richard D. Jones, Cape Girardeau, for appellant.

Dwight Crader, Sikeston, for respondent.

McDOWELL, Judge.

This is an action to collect benefits on a hospital, surgical, medical and special services expense policy. Plaintiff recovered a verdict and judgment against defendant for $735. Defendant appealed.

The petition alleged, inter alia, that on July 21, 1958, defendant executed and delivered to plaintiff its policy of insurance by which it agreed to pay the benefits provided therein for expenses of hospital confinement, medical treatment and other specified expenses incurred while the policy is in force; that while said policy was in force plaintiff became ill and entered the Missouri Delta Community Hospital at Sikeston, Missouri, on March 9, 1959, remaining there until March 18, 1959; re-entered said hospital on March 26, 1959, remaining therein until April 2, 1959, and re-entered April 28, 1959, remaining until May 22, 1959; that because of such sickness defendant became liable for benefits as provided in said policy for hospital confinement, medicines, drugs, dressings and supplies, x-ray examinations, room service for forty days, including doctor bills in the sum of $735.

The defense of appellant was based upon certain false answers in the application for the purported policy, which appellant maintains were misrepresentations and fraudulent concealments of true answers to these questions contained in the application, and further that the policy was rescinded and

cancelled, and all premiums tendered back to the respondent, which she refused to accept. The policy sued on contained the following:

"Part 10 Time Limit on Certain Defenses

"(a) After three years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred after the expiration of such three-year period; (b) No claim for loss incurred after three years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

"Part 12 Limitations and Exclusions Standard Provisions

"1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. No reduction shall be made in any indemnity herein provided by reason of change in the occupation of the insured or by reason of his doing any act or thing pertaining to any other occupation.

"2. No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed thereon.

"Additional Provisions

"3. This policy is issued in consideration of the statements and agreements contained in the application, a copy of which is attached hereto and is hereby made a part hereof, and the payment .in advance of premium for the initial term hereof. * * *"

The application for the policy contained, in part, the .following questions and answers:

"6. Are you and all other members of the Family Group to be insured now in good health and free from any physical or mental defect? Yes.

"8. Have you, or any member of the Family Group to be insured, ever had any disease of the heart, lungs, kidneys, stomach, or bladder; or high blood pressure, paralysis, arthritis, syphilis, cancer, diabetes, hernia, goitre, or rectal disease? No.

"9. Have you, or any member of the Family Group to be insured, received medical or surgical advice or treatment within the past three years? No. (And below this is written Good Health.)

"10. Do you agree that the insurance applied for shall be subject to the conditions and provisions of the policy, and that it shall not be effective until a policy has been actually issued hereon? Yes.

"11. Do you represent these answers to be true and complete to the best of your knowledge and belief? Yes."

It is appellant's contention that respondent admitted in the trial that the answers to questions numbered 6, 8, and 9 of the application were false; that the policy was issued in consideration thereof so that respondent's misrepresentations as to such false answers induced appellant to rely thereon to its detriment and that because of such false answers respondent is barred from recovery under the policy.

It is respondent's contention that at the time of applying for the policy she truth-

fully stated to the agent the facts involved in the risk and the agent, without knowledge or collusion of the insured, inserted false statements in the application, therefore appellant cannot set up such misstatements in avoidance of the policy.

Appellant admits that on July 21, 1958, it issued and delivered to respondent the insurance policy sued on; that as a part thereof it contained the application, signed by respondent. Respondent admits she signed the application.

Respondent testified that appellant's agent, a Mr. MacDonald, first talked to her about the insurance July 15, 1958, and, at that time, asked about the condition of her health; that she explained to him she was in good health, all except arthritis in her knees; that he said that made no difference. She stated she asked him to return the next day as she wanted to consult her banker about taking out the policy; that the agent returned and at that time she told him she would take the policy. She testified that when the agent returned she invited him into the house and they sat down in the living room, she on the divan and the agent in a chair a little beyond her; that she and the agent were the only ones present at the time the application was made. She stated the agent asked all the questions and wrote the answers down; that he only asked her four questions—her name, residence, occupation and post office box; that he never asked her questions contained in the application numbered 6, 8, 9, 10, and 11, and that she did not give the answers contained therein. Respondent testified:

"Q. Would you tell this jury whether or not you answered truthfully that day all questions that were asked you? A. I did. All questions that were asked me, I answered truthfully."

She testified she did not read the application before signing it. She stated: "I did not read it, because I thought this was the only an application and I had answered all questions that he had put to me truthfully, and I saw no use of reading the entire application. I just thought that it was an application for the hospitalization, and I immediately signed my name in two places."

Respondent stated she paid the agent $24.85, the premium on the policy for three months and had paid all premiums on said policy since receiving it.

Respondent testified that the agent sat down and wrote in the answers to the questions on the application, which was on his lap; that she could see him writing. She gave this evidence:

"Q. Did he have to get up to hand you the application? A. No, we were close enough that he handed me the application and I signed it, because I had answered all the questions that he asked me.

"Q. You have no difficulty reading the application I assume, from what you say? A. Oh, no, I can read it. You mean now?

"Q. Yes. A. I can read it.

"Q. You could have read it on that day, too? A. Oh, yes, I could have, but I didn't read the whole thing, no. I just—

"Q. You could have taken your time and— A. Yes, sir.

"Q. (Continuing)—and done whatever you wanted? A. Yes, sir.

"Q. You had plenty of opportunity to sit there and read the application if you wanted to. You just went ahead and signed it, as I understand. A. I just went ahead and signed it because he had asked me the questions, and I answered all questions that he had asked me.

"Q. Mrs. Haman, when you signed the application, I assume it was not folded, but out flat, was it not, not any part of it folded up? A. I don't think so. I imagine it was just like it is now.

"Q. Wasn't any part of it concealed or hidden? A. No, not that I know of. My name, my signature is right on the bottom right here (indicating), I suppose.

"Q. There wasn't any paper or anything else covering the application when you signed it? A. I think not."

Respondent testified that in 1956, while visiting her son in Arkansas, she had an attack and was treated by Dr. Hyber, who thought she had some gall bladder trouble and advised her upon returning home to see her family doctor; that in 1956, approximately two years prior to the date of the application for insurance, she went to the Missouri Delta Community Hospital in Sikeston for a checkup; that she was treated by Dr. McClure, who diagnosed her case as diverticulitis; that she did not know whether this trouble she had back in 1956 continued up until her treatment in 1959. She admitted that at the time she signed the application for insurance she knew she had been in the hospital and had been treated for diverticulitis but stated that appellant's agent had not asked her if she had been in the hospital. She gave this evidence:

"Q. And you knew that you had had high blood pressure, too, didn't you? A. I was never treated for high blood pressure. If I was, he didn't tell me what was wrong. I was just under Dr. McClure for arthritis, and maybe he said I had high blood pressure, but I didn't know that I was treated for that."

Respondent admitted, in her deposition, that she had had a small amount of high blood pressure. She gave this testimony:

"Q. You know of that and you knew of the arthritis at the time the application was taken? A. I know of the arthritis because I took a full treatment of cortisone from Dr. McClure for the arthritis."

Respondent's evidence is that she was confined in the Missouri Delta Community Hospital three times in 1959. On the first two occasions she was treated by Dr. McClure, who diagnosed her trouble as diverticulitis. She stated that she got worse under his treatment and changed to Drs. Heeb and Ferguson, who diagnosed her trouble as malignant tumor of the colon and operated on her for that.

There is no dispute that appellant, upon learning of the false answers contained to the questions in the application for insurance, cancelled the same and tendered back to respondent the premiums she had paid, through the U.S. mail, which respondent refused to accept.

Appellant offered in evidence exhibits E, F, G, H, and I, photostatic copies of records from the Missouri Delta Community Hospital at Sikeston. Exhibit E (in the diagnosis and history sheet) shows that respondent had "Biliary Dyskenisia" and "Diverticulosis— Duodenum" and was in the hospital from October 28, 1956, to November 5, 1956. This exhibit also shows that respondent had hypertension for many years and had been under treatment by Dr. Kniber, of Morelton, Ark., prior to admission.

Appellant assigns as error the trial court's refusal to sustain its motion to dismiss at the close of respondent's evidence and all of the evidence and the trial court's denial of appellant's after-trial motion to set aside the verdict and enter judgment for appellant in accordance with its motion to dismiss because respondent's own proof shows she did not give an answer or disclose the facts as shown in questions numbered 6, 8, and 9 of the application, which, respondent admits, were false answers when she signed the same, without reading it, though she had opportunity to and could have read it, and represented to appellant; by her signing the application, that the answers were true and correct and that the policy was issued in consideration thereof, so that respondent's misrepresentations as contained in the answers to these questions induced appellant

to rely thereon to its detriment and bars respondent's recovery under the policy.

Respondent does not question appellant's contention that the answers given to questions 6, 8, and 9 in her application for the policy of insurance in question were false or that such answers were material but contends that respondent, at the time of applying for the policy, truthfully stated to the agent the facts involved in the risk and the agent, without knowledge or collusion of the insured, inserted false statements in the application, and therefore appellant cannot set up such misstatements in avoidance of the policy.

■ A material misrepresentation made by an applicant for insurance, in reliance upon which a policy is issued to him, renders the policy voidable. State Farm Mutual Automobile Insurance Co. v. West, D.C., 149 F.Supp. 289, 305; Gooch v. Motors Insurance Co., Mo.App., 312 S.W. 2d 605, 608; Minich v. M. F. A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 57 [1, 3].

This is true whether such misrepresentation be made intentionally or through mistake and in good faith. State Farm Mutual Automobile Insurance Co. v. West, supra; Smith v. American Automobile Insurance Co., 188 Mo.App. 297, 303–304, 175 S.W. 113.

■ An application for a policy of insurance is an offer, intended to be relied upon and to become a part of the contract, when accepted. Absent fraud or mistake one is bound by his written contract and an application as an offer is contractual in nature. Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, 662.

■ The facts in the instant case show that appellant's agent placed the untrue answers contained in questions 6, 8, and 9, in the application without the knowledge or consent of respondent; that respondent had not told the agent the true facts concerning these answers but had signed the application without reading it when she could have read the same and was afforded ample opportunity to do so. Under such circumstances respondent is bound in law to have known the contents of the instrument she signed, whether she read it or not. Minich v. M. F. A. Mutual Insurance Co., supra; 6 Blashfield Automobile Law and Practice, 581, Sec. 3921; Appleman Insurance Law and Practice, p. 25, § 9405; Dickinson v. Bankers Life & Casualty Co., supra; Gooch v. Motors Insurance Co., supra.

■ We follow the law as declared in Gooch v. Motors Insurance Co., supra, an opinion by our court which states on page 609 of 312 S.W.2d:

"* * * One who can read and does not read is foreclosed by his own negligence, and while law affords everyone a reasonable protection against fraud in dealing, it is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information. Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658."

Respondent relies strongly on the opinion in Voss v. American Mutual Liability Insurance Co., Mo.App., 341 S.W.2d 270. On page 277 [7], the court states:

"In support of its argument that plaintiff was bound by the answers in the application, that they were misrepresentations, and that any policy issued on them would have been void ab initio, defendant cites and discusses several cases involving applications or policies, principally Minich v. M. F. A. Mutual Ins. Co., Mo.App., 325 S.W. 2d 56; Zielinski et al. v. General American Life Ins. Co., Mo.App., 96 S.W.2d 1059; Dickinson v. Bankers Life & Cas. Co., supra; and Halbrook v. Atlas Life Ins. Co., supra [Mo.App., 234 S.W.2d 628]. All of these cases

are distinguishable on the facts. None of them involved a factual situation where the applicant, as here, claimed that he had given the true information to the agent, and that he had signed the application without reading it or was aware that the agent, through fraud or mistake, had inserted answers which were misstatements. Most of those cases recognize the rule that ' * * * Absent fraud or mistake one is bound by his written contract and an application as an offer is contractual in nature.' Minich v. M. F. A. Mutual Ins. Co., supra, 325 S.W.2d loc. cit. page 57, by which is meant, of course, fraud or mistake on the part of the insurer or its agent."

 Then the court lays down the rule applicable in the Voss case as found in 45 C.J.S. Insurance § 729, where it is stated:

" 'Although there is some authority to the contrary, the general rule is that where insured at the time of applying for the policy truthfully states to the agent the facts involved in the risk, or the agent otherwise knows the facts, and the agent, acting within his real or apparent authority, and without the actual or constructive knowledge or collusion of the insured, inserts in the application or in the policy mistaken or intentionally false statements, the insurer cannot set up such misstatements in avoidance of the policy provided, * * *,' "

We find the rule of law declared in the Voss case, supra, is the law as declared by the Missouri Appellate Courts but the factual situation involved in the instant case does not support respondent's contention. There is no testimony that respondent revealed to appellant's agent the true facts contained in the answers to the questions in the application complained of or that appellant's agent knew the truth as to such facts. Under the authorities herein set out we find there is no evidence of fraud, concealment or mistake and that respondent is estopped from denying full knowledge of the terms of the application.

We find for appellant under this alleged error.

It is unnecessary to pass upon appellant's second alleged error complaining of Instruction No. I given by the court since we have found plaintiff-respondent is not entitled to recover.

Judgment reversed and remanded with directions that judgment for plaintiff-respondent be set aside and judgment entered for defendant-appellant on plaintiff's petition.

STONE, P. J., and HUNTER, Special Judge, concur.