**Stacy K. SHIRKEY, Appellant,**

v.

**GUARANTEE TRUST LIFE & INSURANCE COMPANY, Respondent.**

**No. WD 63191.**

Missouri Court of Appeals, Western District.

Aug. 10, 2004.

Robert L. Shirkey, Kansas City, MO, for Appellant.

Dennis D. Palmer, Kansas City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., HAROLD L. LOWENSTEIN and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Stacy K. Shirkey brought a claim for breach of insurance contract and vexatious refusal to pay against Guarantee Trust Life Insurance Company when it refused to pay his claim under a credit disability insurance policy. Guarantee Trust asserted that Mr. Shirkey made a material misrepresentation on his application and, on that basis, it had rescinded his policy. The trial court found in favor of Guarantee Trust. But Mr. Shirkey did not warrant his answers on the application, so Guarantee Trust was required to show that he made a fraudulent misrepresentation, which includes proving intent to deceive. Guarantee Trust did not prove this, so it was not entitled to a judgment in its favor. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Shirkey was employed with Computer Science Corporation. He took out a car loan with the Computer Science Corporation Employees' Federal Credit Union on December 9, 1996. At that time, he was offered credit life and disability insurance from Guarantee Trust, which insurance is the subject of this litigation.

Mr. Shirkey filled out the application, which stated that "[i]f the question(s) below is (are) answered "Yes", or you do not meet all of the eligibility requirements, then you are not eligible for insurance." The question at issue here related to the disability insurance and asked "[w]ithin the past two years have you (Primary Borrower only) had treatment or been advised to have treatment for any of the following: mental or nervous disorders, strained back, slipped disc, or sciatica?" Mr. Shirkey checked "No" in answer to this question. The application also stated that the applicant's signature means that "[y]ou have read the question(s) and answer(s) above and it is (they are) correct and complete, to the best of your knowledge and belief." Mr. Shirkey signed the application.

Mr. Shirkey received an insurance certificate for both credit life and disability insurance and premiums for the insurance began to be automatically deducted from Mr. Shirkey's account with the credit union. Mr. Shirkey had a cancer relapse[1] and by mid-year 1997 he was no longer able to work and went onto disability. He submitted a claim to Guarantee Trust on June 9, 1997. The claim form stated that his primary medical condition causing disability was depression due to chronic pain. Guarantee Trust acquired Mr. Shirkey's medical records and reviewed his claim. It found that he had been treated for various mental disorders, particularly depression, in the two years before applying for insurance. Guarantee Trust rescinded Mr. Shirkey's insurance coverage on October 23, 1997, because Guarantee Trust considered depression to be part of the category of "mental and nervous disorders" that it asked about in its application. So the claim was not paid. Mr. Shirkey brought a claim for breach of insurance contract and vexatious refusal to pay.

Mr. Larry Graves, an officer of Guarantee Trust, testified at trial that a "yes" answer to either question on the application meant automatic denial of insurance. He also testified that the policy was rescinded because the medical records showed that in the six months before applying for benefits, Mr. Shirkey had sought treatment at least eight times for

---

1. Mr. Shirkey first had cancer in 1989 but he was in remission at the time that he filled out this insurance application. The fact that he was diagnosed with cancer in 1989 is not relevant to Guarantee Trust's decision to rescind his disability insurance.

anxiety, depression, or bipolar disorder. Had Guarantee Trust known of his history of mental disorder, the insurance certificate would not have been issued.

Dr. William Logan, Mr. Shirkey's treating psychiatrist, testified for Mr. Shirkey. He testified that in the fall of 1996 he began treating Mr. Shirkey for depression due to an accumulation of physical problems.[2] He testified that Mr. Shirkey's official diagnosis is depression secondary to a general medical condition. He further stated that the depression derives from the other physical problems that Mr. Shirkey has and that all of those conditions together are why he cannot work. He said, "it just became enough of a drain on him, with the depression and the pain, that he felt he was—didn't really have the stamina to continue." On cross-examination, he acknowledged that on the claim form he listed depression due to chronic pain as Mr. Shirkey's primary medical condition causing disability and that he listed September 6, 1996, as the date when he began seeing Mr. Shirkey.

Before Dr. Logan began to see Mr. Shirkey, Mr. Shirkey's regular physician, Dr. Zito, noted in Mr. Shirkey's medical files that he should begin seeing Dr. Logan for his bipolar disorder. Dr. Logan and Mr. Shirkey both testified that they did not know about this note, although Dr. Logan said that it did not surprise him. Mr. Shirkey testified that he was unaware that Dr. Zito suggested that he see Dr. Logan for bipolar disorder and that Dr. Zito never discussed with him that he was being treated for anxiety, depression, or bipolar disorder. Mr. Shirkey maintained that his answers were correct and that he was unaware that he might have had any mental disorders. Mr. Shirkey admitted that he was prescribed Prozac at one time, but he could not remember when or why it was prescribed, and stated that it had no value to him. There were no other medical records introduced, and no specific evidence indicating that Mr. Shirkey was aware of any treatment for bipolar disorder.

There was some conflicting evidence about the refund of Mr. Shirkey's premiums after Guarantee Trust rescinded the policy. Although the policy was rescinded on October 23, 1997, Guarantee Trust continued to collect premiums from him through June 4, 1998. Mr. Graves testified that a letter was also sent to the credit union on October 23, 1997, informing the credit union that the insurance was rescinded and asking it to make the appropriate refund and credit to Mr. Shirkey's account. Mr. Shirkey received a refund of $139.86 on June 11, 1998. But there is a dispute about an additional $42.00 in premiums that were deducted from Mr. Shirkey's account and were not repaid as a part of the June 11, 1998, refund. Mr. Shirkey maintains that he is still owed those premiums collected after October 1997. During the trial, Mr. Graves testified that there was a discrepancy in the premiums of approximately $42.00. He stated that the credit union told him that the premiums paid by Mr. Shirkey totaled $139.86, but when looking at the paperwork there was another $42.00 outstanding and he did not know why that discrepancy existed.

After the trial and before the trial court ruled, Guarantee Trust provided the trial judge with an affidavit from Mr. Graves. In the affidavit, he stated that he had investigated the discrepancy in the premiums and determined that the premiums

---

**2.** Mr. Shirkey suffers from several different physical problems, none of which are relevant to this case.

that Mr. Shirkey continued to pay, totaling $42.00, were for the credit life insurance, which was not rescinded at the time that his credit disability insurance was rescinded. Mr. Graves further stated that Mr. Shirkey was fully refunded for the premiums paid on the disability insurance, which totaled $139.86.

The trial court found in favor of Guarantee Trust and entered judgment in its favor. Mr. Shirkey appeals and brings three points. He first claims that the trial court erred in entering judgment for Guarantee Trust because an insurance company waives its right to deny coverage when it continues to collect premiums and Guarantee Trust accepted premiums from Mr. Shirkey for seven months after it rescinded coverage. He next claims that the trial court erred in entering judgment for Guarantee Trust because an insurance company may avoid its contract because of false representations only if the representations are false and material to the risk and made with the intent to deceive. He claims that the insurance company did not prove that he made an intentional and material representation. He finally claims that the trial court erred in entering judgment for Guarantee Trust because the law requires explicit disclosure to the insured that coverage is dependent upon disclosure when information in the application is being used as a basis to deny coverage.

## II. STANDARD OF REVIEW

In a court-tried case, the decision of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). When the trial court does not enter any findings of fact or conclusions of law, we assume that the trial court resolved all issues of fact in accordance with the result reached. Rule 73.01(c);[3] *Bechtle v. Tandy Corp.,* 77 S.W.3d 689, 692 (Mo.App. E.D.2002).

## III. LEGAL ANALYSIS

As an initial matter, Guarantee Trust claims that Mr. Shirkey "presumably stated a claim for vexatious refusal to pay insurance proceeds" and so we cannot consider his second and third points. Guarantee Trust briefly mentions that Mr. Shirkey did not plead a claim of waiver at trial; but it focuses on its claim that Mr. Shirkey failed to preserve his second and third points both because they do not present an argument for vexatious refusal to pay and because they were not argued to the trial court. As such, Guarantee Trust maintains that we may not consider the latter two points on appeal. *See Bechtle,* 77 S.W.3d at 696.

But Guarantee Trust misunderstands Mr. Shirkey's petition. He did not just claim vexatious refusal to pay; he claimed a breach of contract due to Guarantee Trust's refusal to pay on his claim under the policy and claimed that such refusal was vexatious.[4] Guarantee Trust asserted several affirmative defenses to Mr. Shirkey's claim, and Mr. Shirkey's second and third points relate directly to those defenses. Guarantee Trust had the burden of proving its affirmative defenses; Mr. Shirkey did not have to disprove them before

---

3. Unless otherwise indicated, all rule references are to Missouri Court Rules (2004).

4. Vexatious refusal to pay is not a claim that stands alone. A plaintiff brings a claim for breach of the insurance policy when the insurance company refuses to pay, which ele-

ments Mr. Shirkey asserted in his petition. Then, if the plaintiff also proves that the refusal to pay was vexatious, the plaintiff may request additional damages under section 375.420 RSMo. (2000).

they were even raised. *See Warren Davis Props. V, L.L.C. v. United Fire & Cas. Co.,* 111 S.W.3d 515, 525 (Mo.App. S.D.2003). In his second and third points, Mr. Shirkey is asserting that Guarantee Trust did not meet its burden.

## A. Guarantee Trust did not Waive its Right to Deny Coverage

■ Mr. Shirkey's first point is that because Guarantee Trust continued to collect premiums after October 1997, it waived its right to deny coverage. Guarantee Trust argues that it did not retain any of the premiums paid by Mr. Shirkey and that his premium payments were returned in full within a reasonable time.

Guarantee Trust presented evidence, through Mr. Graves' affidavit, that the additional premiums collected were for the credit life insurance and that only the credit disability insurance policy was rescinded. There is no evidence in the record or assertion in the briefs refuting this claim.

We assume that the trial court resolved all factual matters in accordance with the result reached. *Bechtle,* 77 S.W.3d at 692. Because the trial court found for Guarantee Trust, and did not order any further premium refunds, presumably it found that the remaining $42.00 outstanding related to the credit life insurance policy that was not rescinded. Guarantee Trust sent a letter to the credit union on October 23, 1997, the same day it rescinded the policy, directing the credit union to refund the full premium. Although there was some delay by the credit union, the premium was refunded in full within eight months, which is within a reasonable time. Because Guarantee Trust refunded the full premium for the disability insurance, the question of waiver does not apply.

## B. Guarantee Trust did not Prove the Affirmative Defense of Fraudulent Misrepresentation

Mr. Shirkey's second and third points deal with the same issue, what exactly had to be shown to support Guarantee Trust's affirmative defense of misrepresentation. Mr. Shirkey claims that in order to rescind the contract, Guarantee Trust had to prove that the representations by Mr. Shirkey were false, material to the risk, and made with the intent to deceive. He also claims that Guarantee Trust had to explicitly disclose that coverage was contingent upon disclosure because it used the information in the application as a basis to deny coverage. Guarantee Trust counters that it did not have to prove that Mr. Shirkey intended to deceive it because the application expressly provided that a misrepresentation would void the policy and that coverage was contingent on disclosure of mental health information.

■ Under Missouri law, an insurance company may avoid a policy by showing that a representation is both false and material when "(1) the representation is warranted to be true, (2) the policy is conditioned upon its truth, (3) the policy provides that its falsity will avoid the policy, or (4) the application is incorporated into and attached to the policy." *Cont'l Cas. Co. v. Maxwell,* 799 S.W.2d 882, 888 (Mo.App. W.D.1990). If the insurance company cannot show that it fits within one of the four situations listed above, then it may avoid the policy only by showing that the representation in the application was false and fraudulently made. *Id.* The former requirements apply to prove a material misrepresentation and the latter requirements apply to prove a fraudulent misrepresentation. *Cent. Bank of Lake of the Ozarks v. First Marine Ins. Co.,* 975 S.W.2d 222, 225 (Mo.App. W.D.1998).

The parties appear to be confused about the distinctions between material misrepresentations and fraudulent misrepresentations. That confusion is the fundamental difference between their assertions on appeal. Mr. Shirkey is really asserting that Guarantee Trust is claiming that he made a fraudulent misrepresentation and so must show that the representations were false and fraudulently made. *Maxwell,* 799 S.W.2d at 888. Guarantee Trust, on the other hand, is claiming that Mr. Shirkey made a material misrepresentation and so it only has to show that the representation was material and false. *Id.*

■ In order to agree with Guarantee Trust and affirm the trial court, we must find that Mr. Shirkey made a material misrepresentation. So we have to decide whether Mr. Shirkey warranted his representations to be true, the policy is conditioned upon the truth of the representations, the policy provides that the falsity of a representation will avoid the policy, or the application is incorporated into the policy. The application says that "[i]f the question(s) below is (are) answered "Yes," or you do not meet all of the eligibility requirements, then you are not eligible for insurance." The application stated that Mr. Shirkey's signature means that "[y]ou have read the question(s) above and it is (they are) correct and complete, to the best of your knowledge and belief." Guarantee Trust claims that this language explicitly provides that the falsity of the representation would void the policy. We disagree.

Because Mr. Shirkey's signature meant that the answers were "correct and complete to the best of [his] knowledge," we are interested in his state of mind at the time that he signed the application. *See Bohm v. Fid. & Cas. Co. of New York,* 399 S.W.2d 450, 451, 453 (Mo.App.1966) (where question asked about applicant's health "to the best of [his] knowledge and belief," the ultimate fact to be established was the applicant's state of mind at the time that he filled out the application). Mr. Shirkey testified that his answers were correct and complete to the best of his knowledge. There was no other evidence presented about his state of mind to contradict this. We find that Mr. Shirkey did not warrant that his representation that he had no mental or nervous disorders was true. *See Cohen v. Metro. Life Ins. Co.,* 444 S.W.2d 498, 504 (Mo.App.1969) ("In the law of insurance the courts do not favor warranties. If there is doubt they lean against a construction of a statement by an insured or an applicant as a warranty and unless it is clearly shown by the form of the contract to have been intended by both parties to be a warranty, to be strictly and literally complied with, it will be held to be a representation."). There has been no evidence that the application was incorporated into the policy. And the fact that the application said that a "yes" answer would mean that the applicant is not eligible for insurance does not mean that the policy is conditioned upon the truth of the representations or that the falsity of a representation will avoid the policy.

■ Because Guarantee Trust did not show that the application created a warranty, it could not void the policy merely by showing that this was a material misrepresentation. Instead, Guarantee Trust had to prove that this was a fraudulent misrepresentation. *See Barrera v. Individual Assur. Co.,* 829 S.W.2d 14, 18 (Mo. App.W.D.1992) (where there was no statement in the application that the answers given in the application were warranted to be true or that the policy was conditioned on the truth of the representations, an instruction for material misrepresentation should not have been given). To prove fraudulent misrepresentation, the insured's

representations "'must not only be false and material to the risk, but also must be made with intent to deceive.'" *Cohen,* 444 S.W.2d at 504 (quoting *Toler v. Mo. Ins. Co.,* 243 S.W.2d 788, 791 (Mo.App.1951)); *see also Cova v. Am. Family Mut. Ins. Co.,* 880 S.W.2d 928, 930 (Mo.App. E.D. 1994) (providing a more detailed breakdown of the elements of fraudulent misrepresentation).

Guarantee Trust did not demonstrate the elements of fraud. In its brief, Guarantee Trust argues that it had no obligation to prove Mr. Shirkey's intent to deceive and it does not claim to have proven that Mr. Shirkey intended to deceive it. This is a necessary element of fraudulent misrepresentation and Guarantee Trust did not prove this element. So Guarantee Trust did not prove fraudulent misrepresentation and was not entitled to rescind the policy. *Cf. Warren Davis Props. V,* 111 S.W.3d at 525 ("[I]f one or more of the elements of the cause of action [fraud] are not supported by substantial evidence, a directed verdict is proper.").

Further, in looking at the evidence presented at trial, it does not appear that Guarantee Trust made any effort to show the intent element. Mr. Graves only testified as to the effect of a "yes" answer and of Guarantee Trust's findings that Mr. Shirkey's answer was false because he had received treatment for depression before filling out the application and Guarantee Trust's belief that depression is a mental disorder. The only evidence that addresses the issue of intent comes from Mr. Shirkey, and he stated that his answers were correct to the best of his knowledge and that he was unaware that Dr. Zito had diagnosed him as having any mental disorders. Guarantee Trust did not present any evidence of Mr. Shirkey's state of mind that would show that he did, in fact, know he had a disorder and intended to deceive Guarantee Trust when he marked "yes" on the application.

## IV. CONCLUSION

Guarantee Trust did not establish all the elements of fraudulent misrepresentation and was not entitled to a judgment in its favor. The trial court misapplied the law when it decided the case under material misrepresentation instead of fraudulent misrepresentation and did not require Guarantee Trust to prove an intent to deceive. Its decision was also against the weight of the evidence because no evidence was presented to support a finding of fraudulent misrepresentation. We reverse the judgment of the trial court and remand for the trial court to enter judgment in Mr. Shirkey's favor.

HAROLD L. LOWENSTEIN and RONALD R. HOLLIGER, JJ. concur.