Ronia WEST, Plaintiff,

v.

**WILTON REASSURANCE LIFE COMPANY OF NEW YORK,** Defendant.

No. 08–0425–CV–W–SOW.

United States District Court, W.D. Missouri, Western Division.

March 9, 2009.

Philip E. Nonnemaker, Lee's Summit, MO, for Plaintiff.

Clark H. Cole, Armstrong Teasdale LLP, St. Louis, MO, Katie M. Moore, Armstrong Teasdale LLP, Kansas City, MO, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court is defendant Wilton Reassurance Life Company of New York's ("Wilton") Motion for Summary Judgment (Doc. # 16), plaintiff Ronia West's Response and defendant's Reply. For the reasons stated below, defendant's Motion for Summary Judgment is granted.

### I. *Background*

This case involves life insurance benefits on the life of plaintiff's deceased husband, Johnny L. West. The facts in this case are largely undisputed by the parties. Johnny West saw his doctor on January 19, 2005, complaining of a host of symptoms, including confusion, difficulty with speech, blurred vision, fatigue and periodic headaches. On January 20, 2005, Mr. West underwent a CT scan of his head at Research Belton Hospital in Belton, Missouri. The CT scan revealed the presence of a neoplastic brain tumor. On January 20, 2005, after undergoing the CT scan, Mr. West underwent an MRI scan of his brain at Research Belton Hospital. The MRI confirmed the presence of a brain tumor known as a neoplasm.

At 6:24 p.m. on January 20, 2005, Mr. West was admitted to Research Medical Center in Kansas City, Missouri. The admission forms, specifically the "ADMISSION HX AND ASSESSMENT HI," state in part, "VISIT REASON BRAIN TUMOR." Mr. West remained an inpatient at Research Medical Center from January 20, 2005 until his discharge on January 27, 2005. While he was hospitalized, Mr. West underwent another MRI of his brain on January 24, 2005. That MRI confirmed the presence of a brain tumor and prompted surgery on January 25, 2005.

Defendant Wilton Life Reassurance Company of New York was once known as American Life Insurance Company of New York (collectively referred to as "Wilton"). At 11:12 p.m. EST on January 24, 2005, an application for life insurance on Johnny L. West, in the face amount of $150,000.00, was submitted electronically to defendant Wilton. Mr. West's January 24, 2005 application for life insurance states, in part:

(4) In the past 12 months have you either: A) Been hospitalized for 5 or more consecutive days, other than for conditions from which you have fully recovered?

Answer: NO

In response to the January 24, 2005 application, defendant Wilton issued policy number 4254314. Mr. West's January 24, 2005 application was incorporated into and attached to the policy. On January 25, 2005, Mr. West underwent surgery and biopsy on his brain tumor and was diagnosed with a form of cancer known as malignant glioma or glioblastoma multiforme.

Mr. West died on December 1, 2006. His Death Certificate states in part:

> PART I. Enter the diseases injuries or complications that caused the death. Do not enter the mode of dying such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line
> IMMEDIATE CAUSE a Glioblastoma Multiforme

It is undisputed that in issuing insurance policy number 4254314 to Mr. West, defendant Wilton relied on the "NO" answer given to question 4 on the January 24, 2005 application in making its insurability decision. If a "YES" answer had been provided in response to question 4 on the January 24, 2005 application, Wilton would not have issued a life insurance policy on that application. Mr. West's insurance policy was automatically issued based on the answers provided in the application. In fact, defendant Wilton's system is set up so that if a "YES" answer had been provided in response to question 4 in the application, no life insurance policy would have been issued. Wilton sent a letter to plaintiff's counsel rescinding the policy in June of 2007 and sent a refund check to plaintiff in the amount of $5,516.40, payable to Ronia West, for the refund of premiums paid on the life insurance policy.

Plaintiff opposes certain facts set forth by defendant in their Statement of Material Facts Section. However, these objections are completely immaterial and do not have any affect on the Court's ruling.

## II. *Standard*

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III. *Discussion*

■ As stated earlier, there is little dispute as to the facts in this case. Since the primary issue in this case is one of contract interpretation and not a factual dispute, this Court must determine how long Johnny L. West was hospitalized at the time the January 24, 2005 application for life insurance was submitted online to defendant Wilton.

Defendant argues that at the exact time Mr. West's January 24, 2005 application for life insurance was submitted, he was in the fifth consecutive day of hospitalization at Research Medical Center. Mr. West was admitted to Research Medical Center at 6:24 p.m. on January 20, 2005, and the application for life insurance on Mr. West was submitted at 11:12 p.m. EST on January 24, 2005, thereby constituting five consecutive days of hospitalization. If defendant's assertion is true, then the answer given to question 4 on the life insurance application—whether the applicant had been hospitalized for 5 or more consecutive days in the past 12 months—was false. It is undisputed that the application was incorporated into and attached to the policy and, therefore, the policy may be rescinded for the misrepresentation contained in the application. *Shirkey v. Guarantee Trust Life & Ins. Co.,* 141 S.W.3d 62, 67 (Mo.Ct.App.2004).

In response, plaintiff argues that defendant's assertion is incorrect because, at the time of the submission of the application on January 24, 2005, Mr. West had only been hospitalized for 4 days, 3 hours, 48 minutes and 37 seconds. Plaintiff contends that five consecutive days did not pass between the time Mr. West was admitted into the hospital at 6:24 p.m. on January 20, 2005, and the submission of the application and issuance of the policy at 11:12 p.m. EST on January 24, 2005. Plaintiff argues that this amount of time cannot be considered "5 or more consecutive days," and contends that the plain and ordinary meaning of "5 or more consecutive days" requires the passing of at least 120 hours.

After a thorough examination of the record viewing the evidence in the light most favorable to plaintiff, defendant Wilton is entitled to judgment as a matter of law. Plaintiff's argument that the plain and ordinary meaning of "5 or more consecutive days" requires the passing of at least 120 hours is incorrect, unsupported and defies common sense in the context of hospitalization. The Medicare Act, Title XVIII of the Social Security Act, contains language that is very similar to the language in the application:

> The term "post-hospital extended care services" means extended care services furnished an individual after transfer from a hospital in which he was an inpatient for not less than 3 consecutive days before his discharge from the hospital in connection with such transfer.

42 U.S.C. § 1395x(i). The U.S. Department of Health and Human Services agency, the Centers for Medicare and Medicaid Services ("CMS"), has determined that the day of admission, as described in § 1395x(i), "is counted as a hospital inpatient day" and that "inpatient status commences with the calendar day of hospital admission." Medicare Benefit Policy Manual (CMS Pub. 100–2), ch. 8, § 20–20.1. It is undisputed that Johnny West saw his doctor on January 19, 2005, complaining of a variety of symptoms, including confusion, difficulty with speech, blurred vision, fatigue and periodic headaches. On January 20, 2005, Mr. West underwent a CT scan of his head, which revealed the presence of a neoplastic brain tumor, and an MRI scan of his brain, which confirmed the presence of a brain tumor known as a neoplasm. It is also undisputed that at 6:24 p.m. on January 20, 2005, Mr. West was admitted to Research Medical Center.

Even though this case does not involve Medicare or Medicaid, the concept of "consecutive days of hospitalization" remains the same. Regardless of when the patient arrives or is officially admitted to the hospital, the first day of hospitalization counts as a "day." Thus, even though Mr. West only spent 5 hours and 36 minutes of January 20th in the hospital, January 20th still

counts as one day for purposes of determining "consecutive days of hospitalization," even though it was not a full 24–hour period. This interpretation is consistent with common sense. Question 4 on defendant's life insurance application asked Mr. West if he had been hospitalized for five or more consecutive days. It did not ask whether Mr. West had been hospitalized for 120 or more consecutive hours.

Thus, the evidence shows that Johnny West was hospitalized on January 20, 21, 22, 23 and 24. When Mr. West's life insurance application was submitted at 11:12 p.m. EST on January 24, 2005, Mr. West was in his fifth day of hospitalization. Mr. West should have answered "YES" to question number 4 on the application and it is undisputed that if he had done so, defendant would not have issued the policy. In fact, defendant Wilton's system is set up so that if a "YES" answer is provided in response to question 4, no life insurance policy is issued.

It is undisputed that the application was incorporated into and attached to the policy. Therefore, Wilton may rescind the policy for a misrepresentation contained in the application. *Shirkey*, 141 S.W.3d at 67. Defendant contends that had Mr. West truthfully answered question number 4 and disclosed that he had been hospitalized for five or more consecutive days, the policy would not have been issued. This point is undisputed by plaintiff. Accordingly, defendant Wilton was entitled to rescind the policy. *Haman v. Pyramid Life Ins. Co.*, 347 S.W.2d 449, 455 (Mo.Ct. App.1961). In June 2007, this is precisely what defendant did—Wilton sent a letter to plaintiff's counsel rescinding the policy and sent a refund check to plaintiff in the amount of $5,516.40, payable to Ronia West, for refund of premiums paid on the policy.

To the extent plaintiff argues that the "5 or more consecutive days" question is am-biguous, not only does the Court disagree, but plaintiff has not pled ambiguity in the application. Moreover, Mr. West expressly represented in his application that he had read and understood "all the questions, answers and statements given in this application." Plaintiff has failed to plead ambiguity in the application and, therefore, ambiguity is not an issue in this case. *See Kastendieck v. Millers Mut. Ins. Co. of Alton, Ill.*, 946 S.W.2d 35, 40 (Mo.App. W.D.1997) (rejecting plaintiff's invocation of "reasonable expectations rule of construction" where plaintiff failed to plead or prove any ambiguities in the policy language).

■ Plaintiff argues that defendant has failed to show that the alleged misrepresentation by Mr. West in the application was material and that the misrepresentation was made fraudulently and with the intent to mislead the defendant. A misrepresentation occurs when an applicant makes a false and fraudulent representation in the application. *Shirkey*, 141 S.W.3d at 67. However, under Missouri law, the insurer is not required to show proof of intention. Intent to deceive need not be proven if a material representation is warranted to be true, the policy is conditioned upon the truth of the representations, the policy provides that the falsity of the representations shall avoid the policy, or the application is incorporated into and attached to the policy. *Hite v. American Fam. Mut. Ins. Co.*, 815 S.W.2d 19, 21–22 (Mo.Ct.App.1991). In this case, it is undisputed that the application was incorporated into and attached to the policy. Defendant Wilton "issued the policy in consideration of the application." Accordingly, in order to prevail, defendant Wilton need only prove Mr. West's answer to question 4 was false and material, not that there was an intent to deceive. *See Hite*, 815 S.W.2d at 22 (where there is no dis-

pute that the application for insurance was incorporated into the policy, the insurer "must prove only that representations of [applicant] on the application for insurance were false and material, not that the misrepresentations were fraudulently made.").

The Court has already determined Mr. West's answer to question 4 on the application was false. At the very moment Mr. West was filling out the life insurance application at 11:12 p.m. EST on January 24, 2005, Mr. West was in his fifth day of hospitalization. Therefore, Mr. West falsely answered "NO" to question 4 when asked whether he had been hospitalized for 5 or more consecutive days in the past 12 months.

■ Next, in order to prevail, defendant must also show that Mr. West's answer was material. The Missouri Court of Appeals has explained what materiality means in this context:

> A misrepresentation is material if an insurer, acting reasonably and naturally in accord with its custom and practice, would have relied on the representation. Our statutes further define the nature of the misrepresentation made in the procurement of insurance. Sections 376.580 and 376.800 RSMo.2000 cover life, accident, and health insurance contracts, respectively. They provide that no misrepresentation shall be deemed material or render a policy void unless the matter misrepresented actually contributed to the event triggering the policy's benefits. From our statutory provisions, it is clear that the subject matter of the alleged misrepresentation must be related to the event for which the claim was ultimately filed.

*Smith ex rel. Stephan v. AF & L Ins. Co.,* 147 S.W.3d 767, 774–775 (Mo.Ct.App.2004) (internal citations omitted). In short, to show materiality, defendant Wilton must show that the misrepresentation would have mattered to a reasonable insurer and that the misrepresented matter related to Mr. West's death. The Court has already addressed the first issue. It is undisputed that had Mr. West truthfully answered question number 4, and properly disclosed that he had been hospitalized for five or more consecutive days, defendant would not have issued the policy. In fact, defendant's underwriting system is set up so that if a "YES" answer is provided in response to question 4, no life insurance policy is issued. Thus, defendant has adequately shown that Mr. West's misrepresentation would have mattered in making their insurability decision.

■ Next, defendant Wilton must show that the misrepresented matter related to Mr. West's death. On January 20, 2005, after visiting his doctor with various complaints, Mr. West underwent a CT scan of his head, which revealed the presence of a neoplastic brain tumor, and also underwent an MRI scan of his brain, which confirmed the presence of a brain tumor known as a neoplasm. Mr. West's admission forms from the night of January 20, 2005 indicate that he was being admitted for treatment of a brain tumor. On January 25, 2005, Mr. West underwent surgery and biopsy on his brain tumor and was diagnosed with a form of cancer known as malignant glioma or glioblastoma multiforme. Mr. West died on December 1, 2006 and his Death Certificate indicates that his immediate cause of death was "glioblastoma multiforme." Defendant has shown that Mr. West's misrepresentation on question 4 of the life insurance application was directly related to his death.

## IV. *Conclusion*

For the reason stated above, it is hereby

ORDERED that defendant Wilton's Motion for Summary Judgment (Doc. # 16) is granted. Defendant Wilton is hereby granted judgment as a matter of law and

the above-captioned case is hereby re-moved from the Court's April 2009 Accelerated Trial Docket.